**DAVID P. COOPER, OSB NO. 88036**
Email: cooper@khpatent.com
**ELIZABETH A. TEDESCO, OSB NO. 05093**
Email: tedesco@khpatent.com
KOLISCH HARTWELL, P.C.
520 SW Yamhill Street, Suite 200
Portland, Oregon 97204
Telephone:     (503) 224-6655
Facsimile:     (503) 295-6679

**SETH H. OSTROW (admitted** *pro hac vice***)**
Email: sostrow@dreierllp.com
**ARIANNA FRANKL (admitted** *pro hac vice***)**
Email: afrankl@dreierllp.com
**KARINE LOUIS (admitted** *pro hac vice***)**
Email : klouis@dreierllp.com
DREIER LLP
499 Park Avenue
New York, New York 10022
Telephone:     (212) 328-6100
Facsimile:     (212) 328-6101

*Attorneys for Plaintiff NetRatings, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NETRATINGS, INC.,** <br><br> **PLAINTIFF,** <br><br> v. <br><br> **WEBTRENDS, INC.,** <br><br> **DEFENDANT.** | Civil No.  3:06-cv-1420-HA <br><br> **DECLARATION OF** <br> **DR. BENJAMIN GOLDBERG** |

I, Dr. Benjamin Goldberg, the undersigned, declare:

1.      I am a tenured associate professor in the Department of Computer Science of the Courant Institute of Mathematical Sciences at New York University ("NYU"), in New York, New York.

2.      I received my Ph.D. degree in computer science from Yale University, New Haven, Connecticut in 1988, and my Master of Science and Master of Philosophy degrees in computer science from Yale in 1984.  My undergraduate degree from Williams College in 1982 was a Bachelor of Arts degree with highest honors in mathematical sciences.

3.      I have published over 30 research papers in computer science – primarily in the areas of programming languages, compilers, and verification (ensuring the correctness of software).  My research has received substantial funding from, among others, the National Science Foundation, the U.S. Department of Defense's Defense Advanced Research Projects Agency (DARPA), and the Office of Naval Research.  I have developed and/or taught graduate and undergraduate courses in programming languages, compilers, operating systems, computer architecture, embedded systems, algorithms, and object-oriented programming.

4.      I designed and taught the undergraduate course in Object Oriented programming at New York University, which focused on Java (including Java applets), and C++, but also discussed other languages, such as JavaScript, with object oriented features.  I have also taught courses on operating systems (in which the handling of events plays a critical role) and have lectured on the subject of networks, network protocols, and the World Wide Web.  My research area is programming languages, an important component of which is the study of a variety of computer languages used in a wide range of application areas – including interpreted languages

(like JavaScript and Java byte code) that are executed by software applications such as browsers and stand-alone interpreters.

5. I also have extensive experience reviewing source code in numerous technical industry areas, including banking and finance software, printer and toner cartridge software, optical mouse software, telecommunications software, and web software.

6. Additional information concerning the computer science courses that I have taught, my professional publications and presentations in the field of computer science are set forth in my current Curriculum Vitae, a copy of which is attached hereto.

7. I have been asked to provide my opinion as to the meanings of the terms "local computer use meter" and "user meter" as recited in the claims of U.S. Patent No. 5,675,510 ("the '510 Patent") and U.S. Patent No. 6,115,680 ("the '680 Patent", collectively "the Coffey Patents") and address certain statements made in the September 14, 2007 Declaration of Aaron E. Walsh ("Walsh Decl."). For my work in this case, I am charging my usual and customary rate of $375 per hour. My compensation is not in any way dependent on the outcome of this proceeding or the substance of my opinion.

8. I understand that NetRatings, Inc. ("NetRatings") and WebTrends, Inc. ("WebTrends") have indicated that the terms "local computer use meter" and "user meter" (collectively referred to as "local computer use meter") should be construed to have the same meaning. I understand that NetRatings has construed "local computer use meter" as meaning "a software program designed to collect information regarding the use of other software programs on a computer on which the software program is installed." In my opinion, NetRatings' construction is consistent with the claims, specifications and file histories of the Coffey Patents.

9. I have read the September 14, 2007 declaration of Mr. Aaron E. Walsh. It is my opinion that Mr. Walsh's interpretation of and statements concerning the "local computer use meter" are not consistent with how one of ordinary skill in the art would read the claims, specification and file histories of the Coffey Patents.

10. In preparing this declaration, I have considered what qualifications a person of ordinary skill in the art would have. In my opinion, such a person would have an undergraduate degree in computer science and two years of work experience as a programmer.

11. I disagree with Mr. Walsh's characterization of what he refers to as the "crux of the Coffey invention" as including the concept of panel members. Walsh Decl. ¶ 24. While an embodiment discussed in the specification includes the use of panelists, the claims of the Coffey Patents do not.

12. I disagree with Mr. Walsh's characterizations of the "local computer use meter." Walsh Decl. ¶ 25. Mr. Walsh states that the "local computer use meter" is a "stand alone" computer program. *See* Walsh Declaration at ¶ 25. While there are embodiments described wherein the local computer use meter includes attributes consistent with a stand alone program, the specification does not explicitly address this issue, and the claims contain no indication either way. In my opinion, the local computer use meter does not need to be a stand alone program.

13. I disagree with Mr. Walsh's statement that the "local computer use meter" must generate a chronological record. The information recorded by the local computer use meter depends on which events are preselected to be recorded by the software programmer. That information may or may not include a time element.

14. What is required to be in the log created by the local computer use meter is that which is specified in the claims. For instance, claim 1 of the '510 patent includes a "log of predetermined machine operation events" which "identify titles of open windows and reflects a log of titles of worldwide web pages." This could include for example, the Uniform Resource Locators ("URLs") of the web pages, which are treated as the default titles of web pages by certain browsers such as the Internet Explorer browser. Claim 1 of the '680 patent specifies a "log of predetermined events" which "identifies character strings reflecting on-line activity." Neither of the foregoing explicit aspects of the claims requires a time element.

15. In addition, the patent specification provides examples of where the logged events are not in a chronological order or do not have a time aspect to them. For instance, the specification describes an embodiment where the local computer use meter will log any "Windows application which is already running when the computer use meter is invoked." '510 patent, col. 7, lines 18-20. The example log shows entries of this type as all having the same time ("10:40:27"). There is no indication in the patents as to which of those applications was running first or in a particular time order. Another example is with respect to certain event types described in the patents which do not have a time aspect to them. In particular, the specification identifies "PANEL" and "METER" as two event types which may be logged by the local computer use meter. As described in the specification, "PANEL" refers to a panelist's name and the "METER" refers to version information. '510 patent, col. 8, table and sample log.

16. For the same reasons, I also disagree with Mr. Walsh's statement that the claimed "log" is "a sequential listing of all of the events of interest that occur on a computer system over a period of time." As explained above, the information recorded by the local computer use meter depends on which events are preselected to be recorded. Thus, the log as described in the

4

specification may contain no events, only one event, or multiple events. As claimed, however, the log contains events which identify titles of open windows and web pages, or character strings reflecting on-line activity. I believe that one of ordinary skill in the art would understand the claims to mean that the log contains at least those elements, but not necessarily anything further or over a period of time.

17.   Mr. Walsh makes another statement in his declaration, with which I disagree and believe is not consistent with how one of ordinary skill in the art would interpret the Coffey Patents. Specifically, Mr. Walsh states that the term "log" and "log file" are used interchangeably in the Coffey Patents. I do not believe that the Coffey Patents would be understood by one of skill in the art to mean that a "log" is necessarily a "file." While one of skill in the art could read the claimed log to be a file, the specification identifies multiple log types and the claims are not limited to a "log file." For instance, the '510 patent refers to a "data log" and a "log," as well as an "event log" and "local personal computer use logs." '510 patent, col. 2, lines 54, 58, 59, 64.

18.   Like other data, data for the log would first be generated in the user computer's central processing unit and then stored in memory long enough to accomplish the goals of the claim, including to transfer it to the processing station. The log data need not always be stored in a log file.

19.   Further, I believe that Mr. Walsh's characterization of what he refers to as a "further variation" comprising "'auditing' the content of title bars or edit boxes in a program window" is a misinterpretation of the patents. Walsh Decl. ¶ 30. The "audit" referred to is the subject of new matter added to the '680 patent, but it does not relate to the claims which have been asserted in this case. It is not a technique for logging events as Mr. Walsh describes, but a

5

feature wherein a meter is modified to include an "audit based subsystem" with a timer which "compares the content of an audit target 42 against predetermined criteria" on a periodic basis. '680 patent, col. 11, lines 62-67. This is distinct from collecting data from the titles of windows, which was originally described in the '510 patent. See, for example, col. 4, lines 11-20. Mr. Walsh's interpretation of the "audit" aspect of the '680 claims confuses that concept with the inventions of the claims asserted in this case.

20.     For the above reasons, I agree with NetRatings' construction of "local computer use meter" and "user meter" as "a software program designed to collect information regarding the use of other software programs on a computer on which the software program is installed."

21.     The foregoing declaration is directed to certain portions of Mr. Walsh's declaration and certain statements made in WebTrends' Opening Markman Brief but it is not intended to be a comprehensive response to every portion or statement in such documents. I reserve my right to further respond to portions or statements within such documents, and to amend and/or supplement the foregoing as the case proceeds as may be warranted.

DATED: October 19, 2007                    Benjamin Goldberg